RECEIVED
IN MONROE, LA
DEC 12 2006
Ac
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| JOEL HOUSE | CIVIL ACTION NO. 3: 05-1676 |
| VERSUS | JUDGE ROBERT G. JAMES |
| AGCO CORPORATION | MAG. JUDGE MARK L. HORNSBY |

RULING

This is a diversity action brought by Plaintiff Joel House ("House") against Defendant AGCO Corporation ("AGCO") stemming from his lease of a Valtra T-180 tractor. House asserts state law claims against AGCO alleging fraudulent misrepresentations, breach of warranty, and rehibitory defects.

Before the Court is a Motion for Summary Judgment [Doc. No. 30] filed by AGCO. For the following reasons, the Motion for Summary Judgment is GRANTED.

I.  FACTS AND PROCEDURAL HISTORY

On July 24, 2003, Coon-Ace Trailers, Inc. ("Coon-Ace"), a corporation with its place of business in Oak Grove, Louisiana, entered into a Farm Machinery Dealer Agreement ("the Dealer Agreement") with Valtra U.S.A., Inc. ("Valtra"). Valtra was a distributor for farm tractors manufactured in Finland and marketed in the United States under the name Valtra. Coon-Ace was operated by Eddie Stacy ("Stacy").

Section 2.4 of the Agreement provides as follows:

This Agreement does not make any party the partner, employee, agent or legal representative of the other party for any purpose whatsoever. Neither party may assume or create any obligation or responsibility, express or implied, on behalf of or in the name of the other party. In fulfilling its obligations pursuant to this Agreement, **each party shall be acting as an independent contractor**. Without

> limiting the foregoing, the Dealer shall act as an independent contractor with respect to Valtra.

[July 24, 2003 Farm Machinery Dealer Agreement, Doc. No. 30-8 (emphasis added)]. Under the Dealer Agreement, Valtra provided Coon-Ace with tractors and other equipment and parts at wholesale prices, support for advertising, marketing, financing, and also provided warranty service. Stacy attended training conducted by Valtra.

However, dealers, such as Coon-Ace, control the day-to-day business of their operations, including the ownership or lease of their facilities, their hours of operation, hiring and firing of employees, the retail sales price for products, the way products are advertised, and the means by which they solicit customers. Dealers earn income on the margin or difference between the wholesale and retail prices for the products.

In early 2004, ACGO acquired 100% of the stock of Valtra and thus succeeded to the Dealer Agreement between Valtra and Coon-Ace.

In February 2004, House, a sweet potato farmer, met with Stacy to discuss leasing a Valtra tractor. He explained to Stacy that he wanted a tractor for heavy ground breaking and that he would only lease a tractor if it could pull the necessary equipment and if dual rear wheels were placed on the tractor. Stacy assured House that the Valtra T-180 farm tractor could pull House's Sunflower disk and International chisel, told him that the tractor had 190 horsepower, and also told him that the tractor could perform the functions of any 200 horsepower tractor. Stacy agreed to install rear dual wheels on the tractor if House leased it. Stacy represented to House that he had been trained by Valtra to perform all necessary maintenance on Valtra tractors and that he maintained a full line of Valtra parts and supplies.

On February 10, 2004, House signed a "Valtra Acceptance Lease Agreement," ("the Lease Agreement") leasing a Valtra T-180 farm tractor bearing serial number N37220 ("the Tractor") from Coon-Ace. Stacy fabricated dual rear wheels from pipe and installed them on the Tractor himself; they were not factory-installed. Neither AGCO nor Valtra recommends this type of modification. Stacy did not inform House that he fabricated the rear wheels.

House did not take delivery of the Tractor until late April or early May 2004. He was provided with a copy of the owner's manual upon delivery. The manual states that the Tractor's horsepower range is 174 to 189, based upon the method of establishing engineer horsepower.

At the time House took delivery of the Tractor, it had 10 hours of use. He began using the Tractor shortly after delivery and discovered that it would not pull his disk and chisel satisfactorily. Although he expected to get eight to ten inches of soil penetration, the Tractor could only penetrate the soil between one and three inches. When House attempted to use the Tractor for work requiring less horsepower, the dual wheels installed by Stacy broke off.

On May 25, 2004, Jane House began making telephone calls to a Valtra office to complain about the rear wheels, the Tractor's inability to pull the disk and chisel, and their inability to obtain necessary parts from Stacy. She spoke with Stewart Maxwell ("Maxwell"), who referred her to the nearest Valtra dealership, approximately 200 miles away.

In July or August 2004, Coon-Ace ceased doing business.

In October 2004, Jane House also spoke with Mark Bruster ("Bruster"), an alleged Valtra representative, who gave her the contact information for two other Valtra dealerships. Bruster did not offer any other assistance.

On October 5, 2004, AGCO notified Coon-Ace by letter sent via fax and Federal Express

3

that its Agreement with Valtra would not be renewed. The Dealer Agreement expired on December 31, 2004.

In January 2005, Jane House again contacted Valtra and was referred to Plunk's Farm and Construction Company ("Plunk's") of Monroe, Louisiana.

In February 2005, Jane House contacted Tom Weir ("Weir") of AGCO, who allegedly assured her that he would address the Houses' problems. She testifies that she has never heard back from Weir.

In March 2005, Plunk's examined the Tractor based on House's complaint that it had low horsepower. According to the affidavit of Jane House, she was told by Chris Nelson, a Plunk's employee, that the maximum horsepower output was 158. Plunk's prepared a report which states that there is "[n]o problem" with the Tractor, that it is "putting out 170 PTO horsepower," but that there is nothing Plunk's can do because the "[c]ustomer is pulling a 27 foot sunflower cross cut disc with that tractor that takes a minimum of 200 horsepower."

Since the time he originally leased it, House has used and operated the Tractor. Other than the soil penetration and rear wheel issues, House believes that the Tractor performs satisfactorily. However, House has had problems obtaining parts for the Tractor. The exhaust system was recalled, and House was able to obtain the system from Plunk's, but Plunk's would not install it. In April 2005, House needed a new fuel pump for the Tractor, but was not able to obtain it for 30 days.

As of July 6, 2006, House had used the Tractor for over 660 hours, and, on the date of his deposition, August 29, 2006, he continued to use the Tractor to devine his sweet potatoes.

## II. LAW AND ANALYSIS

### A. Motions for Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

## B. Fraudulent Misrepresentations

Under Louisiana law, a plaintiff can proceed under tort or contract law in asserting fraudulent misrepresentation. *See Coates v. Anco Insulation, Inc.*, 786 So.2d 749, 756 (La. App. 4 Cir. 3/21/2001). House proceeds under a contract theory of liability, contending that Stacy fraudulently induced him to sign the Lease Agreement by making false assurances about the Tractor's capabilities.

Fraud is a misrepresentation or a suppression of the truth made with the intent to obtain an unjust advantage for one party or to cause loss or inconvenience for the other party. Fraud may result from silence or inaction. La. Civ. Code art. 1953. There are three basic elements to an action for fraud against a party to a contract: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to or a cause of the contract. *Shelton v. Standard/700 Associates*, 01-0587, pp. 4-5 (La. 10/16/01), 798 So.2d 60, 64.

House does not bring this cause of action against Stacy or Coon-Ace, but against AGCO under the theory that Stacy acted as its agent. The parties both contend that the issue before the Court is whether Stacy and Coon-Ace served as AGCO's agent, thus subjecting AGCO to liability for any fraudulent misrepresentations allegedly made by Stacy.[1]

Because this is a diversity action, the Court applies Louisiana law on agency. In

---

[1] The Court agrees with AGCO that there is no evidence that it or its employees made any false representations to House about the capabilities of the Tractor or any other statements that induced House to enter into the Lease Agreement. Any statements by Valtra or AGCO employees were made to Jane House after the Lease Agreement was signed.

6

Louisiana, a principal is bound by the authorized acts of his actual agent or mandatary. *See* La. Civ. Code art. 2989 ("Mandate is an act by which one person, the principal, confers authority on another person, the mandatary (or agent), to transact one or more affairs for the principal."). A principal may also be bound by acts of a professed agent acting with "apparent authority." *Tedesco v. Gentry Development, Inc.*, 540 So.2d 960 (La.1989). As explained by the Supreme Court in *Tedesco*:

> Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent. Restatement (Second) of Agency § 8 (1958); W. Seavey, Law of Agency § 8(D) (1968); F. Mechem, Law of Agency § 84 (4th ed.1952); Comment, Agency Power in Louisiana, 40 Tul.L.Rev. 110 (1965) .... In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person. However, the third person has the same rights in relation to the principal under either actual or apparent authority. Further, apparent authority operates only when it is reasonable for the third person to believe the agent is authorized and the third person actually believes this. Restatement, supra § 8, comments a and c.

*Id.* at 963. Courts have used the doctrine "to protect third persons by treating a principal who has manifested an agent's authority to third persons as if the principal had actually granted the authority to the agent." *Id.* (citations omitted). This doctrine has been incorporated into the Louisiana Code of Civil Procedure under the term "putative mandatary." *See* La. Civ. Code art. 3021 ("One who causes a third person to believe that another person is his mandatary [i.e., agent] is bound to the third person who in good faith contracts with the putative mandatary.").

AGCO argues that it should not be subjected to liability for any fraudulent misrepresentations allegedly made by Stacy because Coon-Ace was an independent contractor

7

pursuant to the Dealer Agreement between Coon-Ace and Valtra and based on the fact that Stacy maintained day-to-day control of Coon-Ace. Thus, AGCO contends that Coon-Ace, acting through Stacy, had no authority to serve as its agent.

Having reviewed the Dealer Agreement and the undisputed facts, the Court agrees with AGCO that Coon-Ace and Stacy were not its actual agents. While he may have received training on Valtra tractors and otherwise obtained promotional, financing, and warranty support materials from AGCO, Stacy was in control of day-to-day operations. Stacy's control of operations and the express provision in Section 2.4 of the Dealer Agreement are sufficient for the Court to conclude, as a matter of law, that House is not entitled to recover from AGCO under an actual agency theory. *See God's Glory and Grace, Inc. v. Quick Intern, Inc.*, 938 So.2d 730, 2005-1414 at *9 (La. App. 1 Cir. June 9, 2006) (It was "necessary" for the trial court to review the franchise agreement at issue "for consideration of any claims [plaintiff had] against Quik International based on the actual authority of [its alleged agent,] Simpliance"; the agreement along with other facts in the record were sufficient to find that there was no conveyance of actual agency on Simpliance).[2]

The Court must also consider whether House reasonably and subjectively believed that Stacy and Coon-Ace acted as a putative mandatory or apparent agent on behalf of AGCO, as successor to Valtra, in making false representations to him about the Tractor. In reaching this determination, Louisiana jurisprudence requires the Court to focus on the actions or

---

[2]The Court notes that it relies on the First Circuit's discussion regarding actual agency only, not its discussion of apparent authority. As noted above, contrary to the First Circuit's discussion, the doctrine of apparent agency has been incorporated into Louisiana Civil Code under the term "putative mandatary."

8

"manifestations" of AGCO towards House and/or the community in which he lived.[3] Under this standard, the evidence relied upon by House shows only that Coon-Ace had a reputation in Oak Grove and to House as a dealer in Valtra tractors. The facts show that (1) Coon-Ace purchased the tractors at wholesale prices from Valtra, (2) Coon-Ace placed the tractors for sale or lease at the dealership, (3) Stacy received some training from Valtra, (4) there were Valtra signs at Coon-Ace, and (4) Valtra provided some marketing, finance, and warranty support to Coon-Ace. None of these facts, alone or in total, support a finding that House reasonably and objectively believed that Coon-Ace, through Stacy, acted as an agent of Valtra when he made false representations to House about the capabilities of the Tractor. There is no evidence that Valtra or AGCO provided information to House, or to Stacy in House's presence, or took any other action that objectively suggested its intent to convey agency status on Coon-Ace through Stacy.

Further, House cannot support his apparent agency theory by relying on manifestations from Stacy. Even if Stacy improperly implied that he was the agent of Valtra or AGCO, Louisiana law requires the Court to consider what manifestations were made by the principal, i.e, Valtra or AGCO, not the apparent agent. *See Where Angels Tread, Ltd. v. Dansby*, 855 So.2d

---

[3] AGCO has not specifically addressed House's apparent agency argument. Although AGCO cites Fifth Circuit and Louisiana case law for the proposition that a principal is not liable for the actions of its independent contractor unless the contractor was performing ultrahazardous activities or the principal retained operational control, the cases cited are not dispositive. *See Davenport v. Amax Nickel, Inc.*, 569 So.2d 23, 28 (La. App. 4 Cir. 10/11/90) ("As a general rule, property owners are not liable for the **negligence** of an independent contractor," listing the factors for a determination of independent contractor status, and the exceptions to this rule) (emphasis added); *see also Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 380 (5th Cir. 2001) ("A well-established general rule under Louisiana law is that a principal is not liable for the delictual or quasi-delictual offenses **(torts)** committed by an agent who is an independent contractor in the course of performing its contractual duties.") (emphasis added). House has brought his fraudulent misrepresentation claim under contract, not tort, theory.

906, 911, No. 37,689 (La. App. 2 Cir. Sept. 24, 2003) ("According to La. C[iv]. C[ode] art. 3021, it is the actions of the principal and not the actions of the alleged agent that must cause a third person to believe that a person is the principal's agent; and, thus, the action of . . . the alleged agent, . . . is irrelevant in showing that [he] acted under the apparent authority to act for [the principal].")

The Court concludes that House has failed to raise a genuine issue of material fact for trial on his fraudulent misrepresentation claim against AGCO, and its Motion for Summary Judgment on this claim is GRANTED.

## C.  Breach of Warranty

House also asserts a claim for breach of warranty against AGCO because he was told by Stacy that the Tractor would perform the heavy ground breaking work he needed and because AGCO has failed to provide proper maintenance or repair.

AGCO points to the specific language of the Lease Agreement House signed with Valtra:

**Maintenance of Machinery and Warranty**

> Except as hereinafter provided, the Lessee agrees to be responsible for and to pay the entire cost of all necessary maintenance and repair of the Machinery. All replacement parts and improvements incorporated into the Machinery shall become property of the Lessor.
>
> The Lessee agrees to accept the Machinery in its condition when delivered and acknowledges that no warranty, either express or implied, including without limitation the implied warranty of MERCHANTABILITY OF FITNESS FOR A PARTICULAR PURPOSE, is to be applicable to the Machinery. The Lessor agrees however, if the Machinery is new and covered by a manufacturer's warranty at the time of delivery that the benefit of such warranty shall be extended to the Lessee. The Lessee agrees that there shall be no abatement of the total compensation obligation because of unavailability of the Machinery during periods of its warranted and non-warranted repair.

[Doc. No. 30-4].

To the extent that House asserts a claim for breach of warranty based on the false representations of Coon-Ace through Stacy, the Court has concluded above that those statements are not binding on AGCO. Further, the Lease Agreement clearly provides that AGCO does **not** warrant the Tractor for any particular purpose. Therefore, House has no cause of action for breach of warranty based on the fact that he cannot use the Tractor to perform heavy ground breaking.

Additionally, the Lease Agreement provides that House, not AGCO, is responsible for maintenance or repair of the Tractor. He has no cause of action based on this claim either.[4]

Accordingly, AGCO's Motion for Summary Judgment on House's breach of warranty claim is GRANTED.

### D. Redhibitory Defects

Finally, House asserts a claim against AGCO for the Tractor's alleged redhibitory defects. Louisiana Civil Code article 2520 defines a rehibitory defect as follows:

A defect is redhibitory when it renders the thing useless, or its use so inconvenient

---

[4]To the extent that House argues AGCO breached its warranty to him by failing to provide parts and services, the Court finds that he has also failed to raise a genuine issue of material fact for trial. The Lease Agreement provides that, if new machinery is covered by a manufacturer's warranty, that warranty is to be extended to House. [Doc. No. 33-5, p. 2]. However, House has alleged only that it took 30 days to get a fuel pump and that he was provided a fuel exhaust system by Plunk's after the system was recalled, but that Plunk's would not install the system. The Court finds that neither of these allegations is sufficient to obtain a rescission of the Lease Agreement. House has no claim for damages for the 30 days it took to obtain the fuel pump because the Lease Agreement states that "there is no abatement of the total compensation obligation because of unavailability of the Machinery during periods of its warranted or non-warranted repair." [Doc. No. 35-5, p. 2]. Further, it is unclear, under the evidence presented, how House could have suffered damages for having to install the fuel exhaust system himself, even if there was a technical breach of the warranty.

11

that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

On the other hand, "when the thing the seller has delivered, though in itself free from redhibitory defects, is not the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by the other rules of sale and conventional obligations." La. Civ. Code art. 2529.

In this case, House claims the Tractor has redhibitory defects because it does not perform to his subjective expectations, and Coon-Ace did not properly mount the rear dual wheels. The Court agrees with AGCO that these allegations are insufficient to show that the Tractor had redhibitory defects. House admits that the Tractor could pull his chisel and disk, but that it did not penetrate the soil to the depth he expected. Nevertheless, House has continued to use the Tractor to work his sweet potato fields, even on the morning of his deposition.

Further, the Court has already concluded that any false representations by Coon-Ace, through Stacy, are not attributable to AGCO. For this reason, House cannot argue that, under article 2529, the Tractor was not the "quality" represented by AGCO.

Under these circumstances, the Court finds that House has failed to raise a genuine issue of material fact for trial on his redhibition claim, and AGCO's Motion for Summary Judgment on this claim is also GRANTED.

### III. CONCLUSION

For the foregoing reasons, AGCO's Motion for Summary Judgment [Doc. No. 30] is GRANTED, and House's claims are DISMISSED WITH PREJUDICE, each party to bear its own costs.

Monroe, Louisiana, this __11__ day of __December__, 2006.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE